**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**DAVID C. EGGLETON,**

            **PLAINTIFF,**

            v.                                      **CIVIL ACTION NO.: 2:05CV326**

**PLASSER & THEURER EXPORT
VON BAHNBAUMASCHINEN
GESELLSCHAFT, MBH**

and

**FRANZ PLASSER
BAHNBAUMASCHINEN
INDUSTRIEGESELLSCHAFT, MBH**

            **DEFENDANTS.**

## ORDER

This matter is before the Court on the motion of Plasser & Theurer Export Von Bahnbaumaschinen Gesallschaft, MBH ["Plasser & Theurer"] and Franz Plasser Bahnbaumaschinen Industriegesellschaft, MBH ["Franz Plasser"] (together, "Defendants") to dismiss for lack of personal jurisdiction.  (Doc. 3.)  A hearing was held on November 9, 2005, at which time the Court took Defendants' motion under advisement.  After carefully considering the parties' submissions and arguments, the Court FINDS that it lacks personal jurisdiction over the Defendants.  Rather than dismissing the matter, however, the Court, in the interest of justice, transfers it to the United States District Court for the District of Nebraska.

**I. BACKGROUND AND JURISDICTIONAL FACTS:**

This is a diversity product liability action.  Plaintiff, a citizen and domiciliary of Virginia,

was injured in Nebraska while he was working on an undercutter manufactured and sold by the Defendants to Plasser American. After removing Plaintiff's action to Federal court, Defendants filed the motion to dismiss for lack of personal jurisdiction which is now pending. Upon motion of the Plaintiff, the Court granted leave to conduct jurisdictional discovery. Both parties filed supplemental briefs at the close of the jurisdictional discovery period. Review of the briefs submitted by the parties reveals agreement as to a majority of the facts relevant to the disposition of this motion. Not surprisingly, however, the parties disagree about the application of the law to those facts. Prior to discussing the contentions of the parties, it is helpful to provide some description of the key players in this case.

Both Plasser & Theurer and Franz Plasser are Austrian corporations with their principal places of business in Austria. Plasser & Theurer assembles and sells heavy equipment for the construction and maintenance of railroad tracks, including the RM-802, a ballast cleaning machine more commonly known as an "undercutter." Plasser & Theurer sells both parts and assembled machines. Franz Plasser designs the parts and machines and owns the patents used in the designs.

Neither Plasser & Theurer nor Franz Plasser has a telephone number in Virginia, owns or leases real property in Virginia, owns or operates any motor vehicles in Virginia, operates production or manufacturing facilities in Virginia, has employees working or living in Virginia, has sales personnel working or living in Virginia, or has an officer or director residing or working in Virginia. Furthermore, neither Plasser & Theurer nor Franz Plasser maintains bank accounts or financial accounts in Virginia, pays taxes to the Commonwealth of Virginia, or is registered to do business in Virginia.

Plasser & Theurer does not sell products to any American company other than Plasser American. Plasser American is a Delaware corporation with its principal place of business in Chesapeake, Virginia. Plasser American solicits orders for machines from customers in the United States. If Plasser American can manufacture a requested machine themselves, they do so, using parts purchased primarily from Plasser & Theurer.

If Plasser American cannot make a machine that has been ordered, they communicate with Plasser & Theurer to see if they can make the machine. Plasser American then marks up machines it buys from Plasser & Theurer and sells them to its customers at a higher price. From 2000 to 2004, Plasser American sold 109 railway track machines; it made 99 of them itself and bought 10 from Plasser & Theurer.

The shareholders of Plasser & Theurer and Franz Plasser are identical. Dr. Ing. Josef Theurer is the managing director of both corporations. Dr. Theurer is also the president and sole shareholder of Plasser & Theurer B & F, which is the sole shareholder of Plasser American. However, Plasser American's corporate officers are entirely different from the corporate officers of the Defendants.

The relationship between Plasser American and Plasser & Theurer is one of buyer-seller. Plasser & Theurer's gross income from the sale of parts to Plasser American from 1990-2004 is $133,231,178. Plasser & Theurer's gross income from the sale of machines to Plasser American from 1990-2004 is $35,829,390.

In 1995, an RM-802 was purchased from Plasser & Theurer by Plasser American for services to be provided by Plasser American to Burlington Northern Railroad. The RM-802 was not sold for delivery or use in Virginia. The RM-802 was sold FOB North Sea Port in Germany.

On or about September 6, 1998, the Plaintiff, an employee of Plasser American, was caused to be injured while he was using the RM-802 in Nebraska.

**II. STANDARD:**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 2005 U.S. App. LEXIS 14814 at * 8 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). Unless an evidentiary hearing is held, a plaintiff need only make a prima facie showing of proper jurisdiction to survive the challenge. Id. A district court should consider all proof that relates to the jurisdictional issue. See Mylan Labs., Inc. v. AZKO, N.V., 2 F.3d 56, 62 (4th Cir. 2002) ("although it is true that the plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in his favor, district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences"). Where the jurisdictional issue is decided after discovery, however, proof must be made by a preponderance of the evidence and a plaintiff only receives the benefit of favorable construction to the extent that his allegations are supported by the record evidence. See New Wellington, 2005 U.S. App. LEXIS 14814 at * 8, citing Combs, 886 F.2d at 676; see also Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004) (if jurisdictional discovery is not allowed, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction").

"Because federal courts exercise personal jurisdiction in the manner provided by state

law, we first decide whether Virginia state law authorizes jurisdiction over the defendant; if so, we then must determine whether exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment." New Wellington at * 9 (citing ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997)); see also Mitrano, 377 F.3d at 406. The Supreme Court of Virginia has stated that "[i]t is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 740 (1971) (citation omitted).

### III. ANALYSIS

### A. Jurisdiction in Virginia

Virginia Code Section 801-328.1 provides in pertinent part:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> 1. Transacting any business in this Commonwealth;
>>
>> 2. Contracting to supply services or things in this Commonwealth; . . .
>>
>> 5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth; . . . .

Va. Code Ann. § 801-328.1

### 1. Which jurisdictional acts should be analyzed

As § 801-328.1(A) makes clear, the actions of a principal or his agent may subject the

principal to personal jurisdiction. In his Supplemental Reply Brief, Plaintiff advanced two theories under which Plasser American's contacts with the forum state would be attributable to Defendants. Although Plaintiff abandoned these arguments at the motion hearing, and the Court concludes that Plasser American is neither the agent nor alter-ego of Defendants, each theory merits brief comment. The United States Court of Appeals for the Fourth Circuit discussed the elements of agency under Virginia law in Perry v. Scruggs, 17 Fed. Appx. 81, 89 (4th Cir. 2001). Those elements are "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." Id. (citing Raney v. Barnes Lumber Corp., 195 Va. 956 (Va. 1954)). "Actual control, however, is not the test; it is the right to control which is determinative." Id. (citing Whitfield v. Whittaker Mem'l Hosp., 210 Va. 176, 169 S.E.2d 563, 567 (Va. 1969)). Two factors strongly counsel against finding that Plasser American was the Defendants' agent: Plasser American had the prerogative to decide whether to manufacture a machine requested by a customer or to buy the machine from Plasser & Theurer; and Plasser American had the independent ability to set its own price for a machine that it resold.

Likewise, the record does not support a finding that Plasser American was the Defendants' alter-ego. "The burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 684 (4th Cir. 1976). Revisiting pages two through four of this opinion, wherein the Court described the relationship between Plasser American and the Defendants, it is clear that Plasser American is an independent corporation and not Defendants' alter ego. See DeWitt Truck, 540 F.2d at 686-687 (factors to be considered in analyzing the dependence of an

alleged alter-ego are: failure to observe corporate formalities; non-functioning of other officers or directors; absence of corporate records; and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders).

2.  Whether the long arm statute is satisfied

Because there is no basis to attribute Plasser American's contacts with the forum state to the Defendants, the Court must determine whether Defendants' own actions warrant the exercise of jurisdiction under the Virginia long arm statute.  To establish jurisdiction, Plaintiff must prove two things: (1) that Defendants committed one of the statute's enumerated acts; and (2) that Plaintiff's claim arises from those acts.  See Va. Code Ann. § 801-328.1(C) ("[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him . . . ").  The phrase "arising from" is of critical importance.  The Virginia long arm statute "confers no jurisdiction for the assertion of claims that do not arise from the defendant's act in the state."  City of Virginia Beach v. Roanoke River Basin Ass'n, 776 F.2d 484, 487-488 (4th Cir. 1985).

Over the last fifteen years, Defendants have transacted business in Virginia, selling over one hundred and fifty million dollars of machines and parts to Plasser American.  The machine at issue in this case, however, was not delivered to Virginia nor was it ever intended to be used in Virginia.  Because railroad track is not the same the world over, the machine was designed specifically for use on Burlington Northern Railroad's tracks, which are located in Nebraska and other areas of the midwest.  The critical question, then, is whether Plaintiff's injuries arise from Defendants' contract to sell the RM-802 to a Virginia company or from Plaintiff's use of the RM-802 on a Nebraska railroad.

The phrase "arising from" has been narrowly construed. This Court has previously interpreted it to require "more than simple 'but-for' causation; it requires something akin to legal or proximate causation." Chedid v. Boardwalk Regency Corp., 756 F. Supp. 941, 943 (E.D. Va. 1991). Defendants contend that their contacts with Virginia were sales related and that Plaintiff's claims arise from the operation of the RM-802, which occurred in Nebraska. Plaintiff counters that his claim arises from the Defendants' extensive negotiations and communications regarding the manufacture and sale of the RM-802 to Plasser American in Chesapeake, Virginia. In prior cases, this Court, as well as others within the Fourth Circuit, has found that personal injury claims do not "arise from" sales-related activities. Id.; see also Hardnett v. Duquesne Univ., 897 F. Supp. 920, 924 (D. Md. 1995). There is no reason to find differently in this case; therefore, personal jurisdiction cannot be based upon Va. Code Ann. § 801-328.1(A)(1) or (2).

Plaintiff suggests that the exercise of jurisdiction is nevertheless appropriate under § 801-328.1(A)(5). Plaintiff cites Buettner v. R.W. Martin & Sons, 47 F.3d 116 (4th Cir. 1995), for the proposition that Virginia implies a warranty of merchantablity in contracts for the sale of goods by merchants of those goods. Plaintiff then argues that his cause of action arises from a breach of that warranty. Id. However, subsection (A)(5) is limited to causes of action arising from a breach of warranty that causes injury in this Commonwealth. § 801-328.1(A)(5) (emphasis added). In the case at bar, Plaintiff's injuries occurred in Nebraska - outside of the Commonwealth of Virginia.

3. General Jurisdiction

In limited circumstances, courts applying Virginia law may assert personal jurisdiction over a nonresident defendant who conducts extensive business in Virginia even if the cause of

action does not arise from that business.  Coastal Video Communications, Corp. v. Staywell Corp., 59 F. Supp. 2d 562 (E.D. Va. August 2, 1999); Witt v. Reynolds Metals Corp., 240 Va. 452 (1990).  Exercise of such general jurisdiction still must comport with due process.  To be sufficient to warrant the exercise of general jurisdiction, activities in the state must have been "continuous and systematic."  Carefirst of Maryland, Inc., v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 403 (4th Cir. 2003) (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003); and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

  Plaintiff contends that Defendants made Plasser American, a Virginia company, the entry point for Defendants' products into North America, and that the interaction necessary to maintain that relationship was extensive, continuous, and purposeful.  Even accepting Plaintiff's contention as true, Defendants' contacts with Virginia do not make them subject to general jurisdiction there.  The Fourth Circuit has held that "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction."  ESAB Group v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted).  And "broad constructions of general jurisdiction should be generally disfavored."  Nichols v. G.D.Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993).

  In Nichols v. Searle, the Fourth Circuit heard an appeal from a district court's grant of dismissal for lack of personal jurisdiction.  In that case, the defendant corporation employed 13 Maryland residents as sales representatives and one Maryland resident as a district manager; organized district meetings three times annually in Maryland; scheduled regional and national meetings there twice annually; and had between $ 9 million and $ 13 million annual sales in

Maryland, constituting two percent of its total sales.  Affirming dismissal, the Fourth Circuit found <u>Ratliff v. Cooper Laboratories, Inc.</u>, 444 F.2d 745 (1971) to state the controlling rule of law: "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction."  <u>Nichols</u>, 991 F.2d at 1200.  The *Ratliff* rule is binding precedent and precludes the assertion of general jurisdiction over Defendants in Virginia.

**B.  Dismissal versus Transfer**

Although neither Virginia's long arm statute nor the principles of general jurisdiction reach the Defendants, the Court need not dismiss Plaintiff's claim against them.  Pursuant to 28 U.S.C. § 1406(a) a court may "dismiss, or if it be in the interest of justice, transfer [a case laying venue in the wrong division or district] to any district or division in which it could have been brought."  At the motion hearing, both parties agreed that Defendants are subject to personal jurisdiction in the United States District Court for the District of Nebraska.  The parties' assessment of Nebraska law is accurate.  In <u>Wagner and Liberty Mutual Insurance Co. v. Unicord Corp.</u>, the Supreme Court of Nebraska discussed whether a defendant corporation that sold machinery with the expectation that it be delivered to Nebraska would be subject to jurisdiction under the Nebraska long arm statute.  The court noted that "it is a fair statement that a sale of machinery would be classified a transaction of business in Nebraska . . . ."  247 Neb. 217, 225 (1995) (citing <u>Blum v. Kawaguchi, Ltd.</u>, 331 F. Supp. 216 (D. Neb. 1971)).  And belief that Nebraska was the final destination for the machine would satisfy the requirement that a "defendant must have some knowledge and expectation that the product would reach the forum state."  <u>Id.</u> at 223 (citing <u>Burger King Corp. V. Rudzewicz</u>, 471 U.S. 462 (1985).  The similar facts of this case compel the conclusion that Defendants are subject to personal jurisdiction under

10

the Nebraska long arm statue.

The Fourth Circuit has observed that it is appropriate to deny transfer, and to dismiss, when "the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper," Nichols v. Searle, 991 F.2d at 1202 (4th Cir. 1993); however, the discretion to transfer remains with a district court ultimately. Only after the jurisdictional discovery period ended did it become certain that Defendants were not subject to personal jurisdiction in Virginia. Even then, this was a close case. The Court FINDS that Counsel for the Plaintiff could not reasonably have foreseen that Virginia was an improper forum at the time of filing Plaintiff's motion for judgment.

## CONCLUSION

For the reasons stated in its opinion, the Court FINDS that it lacks personal jurisdiction over the Defendants. It otherwise appearing to be in the interest of justice to do so, however, the Court TRANSFERS this matter to the United States District Court for the District of Nebraska rather than dismissing it.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and to the Clerk of Court for the United States District Court for the District of Nebraska.

It is so **ORDERED**.

                                                /s/
                          HENRY COKE MORGAN, JR.
                   SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 29, 2005